MURPHREE v. BROTHERHOOD OF RAILROAD TRAINMEN.

No. 31956.   Oct. 29, 1946.

*173 P. 2d 926.*

Kerr, Lambert & Conn, of Ada, for plaintiff in error.

W. A. Endle, of Cleveland, Ohio, and Speakman & Speakman, of Sapulpa, for defendant in error.

RILEY, J. This is an action commenced by plaintiff in error, herein referred to as plaintiff, against the defendant in error, herein referred to as defendant, growing out of the settlement of certain complaints or grievances of the employees of the St. Louis & San Francisco Railway Company and its Trustees in Bankruptcy.

In 1919 plaintiff was an employee of the Railway Company as yardman at Francis, a station about ten miles north of Ada. Before moving to Francis, he was a member in good standing of Local Lodge No. 619 Brotherhood of Railroad Trainmen, located at Sapulpa, Okla. About the time he moved to Francis, Local Lodge No. 928 of said Brotherhood was organized at Francis and plaintiff became a charter member of that lodge. He remained a member in good standing of the Brotherhood until the lodge at Francis was discontinued, about July, 1932. His dues were paid until October 1, 1932. From 1919 until 1931, plaintiff was employed as a switchman or yardman at the Francis yard. Some time in 1931 the Railway Company began conducting all of its switching operations at Francis and certain other yards in its system, by roadmen, that is, men operating its trains. This resulted in a furlough of plaintiff and five or six other yardmen stationed at Francis. Plaintiff and other yardmen complained, contending that switching operations in the Francis yard, by employees who operated trains, was a violation by the Railway Company of its contract with the Brotherhood and that their furlough was in violation of said contract. The employees who operated the trains, who were required to do the switching, also complained, contending that the transaction was also a violation of the contract with the union in that they were required to conduct switching operations at wages paid train operators, which were lower than wages paid yardmen.

Plaintiff and others similarly situated presented their grievances to the local lodge at Francis. Just how far negotiations were carried there with reference to the complaints presented through the Francis Lodge does not appear. Apparently the furlough of all the yardmen resulted in the dissolution of the Francis Lodge, which occurred about July, 1932.

Following the dissolution of the local lodge, plaintiff, who was then unemployed, could not obtain work on other roads or elsewhere on the Frisco system because his seniority was at the Francis

yard. He ceased to pay his dues in the Brotherhood and did not transfer his membership to another lodge.

J. M. Kurn and John G. Lonsdale were appointed Trustees in Bankruptcy for the Railway Company and took charge of its property November 1, 1932.

W. I. Lahue, one of the yardmen stationed at Francis, upon dissolution of the lodge at that point, transferred his membership in the Brotherhood to Sapulpa Lodge No. 619, located at Sapulpa, Okla. September 27, 1937, Lahue filed with the local lodge at Sapulpa a new complaint, or a renewal of the old complaint, apparently on his own behalf and on behalf of other members of the Brotherhood affected by the switching operations at Francis.

In substance, the complaint set forth the conditions existing since 1931 at Francis, which he charged were an open violation of the contract between the Brotherhood and the Railway Company in that in 1931 the company discontinued the yard engines at Francis and had ever since required roadmen to perform the duties of yardmen, when the contract provided that work done in the limits of the yard should be manned by yardmen from the seniority list and that where two classes of service are performed in the same day, the higher rate of pay should be paid so that the roadmen performing yard work should receive yardmen pay, which is higher than that of a roadman; that as a result, the yardmen at Francis were deprived of their jobs, in violation of the contract, and roadmen had been required to perform the work at less pay. He asserted that he should be compensated for loss of time, etc.

In support of his claim, Lahue cited a similar condition on the Texas & Pacific Railway Company at Baird, Tex., where a complaint of a similar nature had gone to the National Railroad Adjustment Board, resulting in a decision requiring the restoration of the yardmen to their former positions and payment for their loss of time.

This protest, or claim, and possibly others from other yards on the Frisco system, led to negotiations between representatives of the Brotherhood and the Trustees, extending over a period of about 18 months. In April, 1939, a settlement was effected between the Brotherhood and the Trustees of the Railway Company whereby the Trustees agreed to pay on the various claims a total of about $113,000. The agreement was evidenced by a series of separate written contracts covering the several yards affected.

By the settlement contract involving the Francis yard, three yardmen were paid. They were W. I. Lahue, C. B. Newson, and O. B. Ramkin. The standing of the Francis switchmen's roster for 1935 included the three above named and four others, including plaintiff. Nothing was included in the settlement for plaintiff. In determining the names of the men to be paid and the amount each should receive, the Railway officers requested the negotiating officers of the Brotherhood to furnish the names of those to be paid and the amount to which each was entitled out of the total $113,000. The Brotherhood representatives furnished the information but plaintiff's name was not included. Payment was to be made, and was made, by the Trustees directly to the several claimants.

Apparently plaintiff knew nothing of the settlement until about December, 1939. When he learned thereof, he caused inquiry to be made, but was apparently unable to learn the details or terms of the settlement.

On December 22, 1942, plaintiff instituted this action in the district court of Creek county against the Brotherhood of Railroad Trainmen, wherein he seeks recovery in the sum of $7,000. In this petition he alleges that he is a resident of Pontotoc county, Okla., and that defendant is an association engaged in transacting business in Oklahoma for gain, having its principal headquarters in Cleveland, Ohio. He alleged his mem-

bership in the Brotherhood during the years 1919 to 1931, inclusive, and his employment by the Railway Company as switcher at Francis during said years; that under the constitution and by-laws of the Brotherhood, said Brotherhood was to act as bargaining agent of the employees of said Railway Company; that the defendant had entered into a contract with said Railway Company wherein it was agreed that all switching operations in the Francis yard, and others, should be conducted by what are known as yardmen and that plaintiff was classified as yardman employed in the Francis yard.

He then alleged violation of said agreement as set forth above and his furlough as a result thereof, and that same was in violation of the agreement between the Brotherhood and the Railway Company; that pursuant to the by-laws and constitution of the Brotherhood, negotiations were begun between the Brotherhood and the Railway Company and its Trustees looking to a settlement of the dispute and claims growing out of the alleged violation of the working agreement; that the purpose of said negotiations was to effect a settlement compensating the Francis yardmen, among whom was plaintiff, for the violation of said working contract; that said negotiations continued from 1932 to 1939, inclusive, during which time plaintiff was not employed; that a compromise settlement was effected in 1939 between the Brotherhood, acting as the agent for the yardmen at Francis, among whom was plaintiff, and J. M. Kurn and John G. Lonsdale, Trustees in Bankruptcy for the Railway Company; that plaintiff first learned of the compromise settlement December 28, 1939, and on that date discovered that other yardmen in the Francis yard, similarly discharged, had received compensation under said settlement agreement; that although by virtue of plaintiff's seniority standing as a yardman at Francis, he was entitled to receive the highest amount paid to any person affected by the violation of the working agreement,

nothing had been paid to him; that under said settlement plaintiff was entitled to receive the sum of $7,000.

As grounds for recovery against defendant, plaintiff alleged:

"That although he has been unable to discover, with diligence, the terms of the settlement between the Brotherhood of Railroad Trainmen and the Trustees of the Railway Company, he believes, and therefore alleges, that the Trustees paid to this defendant a sum in excess of $10,000.00 for the settlement in full of all claims of yard men resulting from the violation of the contract above described; that under the terms of this settlement this plaintiff was to receive the sum of $7,000.00 as his part of the settlement sum paid, and that this defendant now holds that sum in its possession as Trustee for this plaintiff.

"(a) That, and in the alternative, the settlement agreement made between the Trustees of the Railway Company and this defendant provided that the Trustees should pay to the Brotherhood a sum in excess of $100,000.00 and that in the consideration of the payment of this sum the Brotherhood agreed to pay a designated sum to each of the yard men whose claims the Brotherhood was representing, among which was the claim of this plaintiff, in the sum of $7,000.00.

"(b) That, and in the alternative, the settlement agreement above described provided that the Trustees of the Railway Company should pay the approximate sum of $100,000.00 to the yard men above designated as a class; that it was further agreed that this defendant should furnish to the Trustees a list of the said yard men with the sum set opposite the name of each which each of the said yard men should receive as determined by the salary formerly received by the discharged yard man, his seniority and the duration of his unemployment caused by the act of the Railway Company, and other factors; and that it was further agreed that the Trustees should pay the amount set opposite the name of each of the yard men to the particular yard man designated, provided the total sum listed did not exceed the total amount of the settlement; that in consideration of the dues paid

by this plaintiff to the defendant and under the provisions of the constitution and by-laws of this defendant Association it was agreed by and between this plaintiff and this defendant Association that the Association should faithfully and diligently present the claim of this plaintiff and others similarly affected, to the Railway Company and or its Trustees. That the defendant Association had knowledge of the plaintiff's claim and knew at the time the settlement above described was effected that the plaintiff was entitled to share in that settlement in the amount of $7,000.00; that the defendant breached its contractual duty owing to this plaintiff in that it failed to name the plaintiff on the list submitted to the Trustees for payment and failed to place opposite his name the amount to which he was entitled, to wit: The sum of $7,000.00; that the defendant erroneously listed the names of divers other persons, to this plaintiff unknown, with the result that the total amount of compromise agreed upon has been expended and paid out by the Trustees of the Railway Company; that by reason of the breach of the contract aforesaid the plaintiff has been damaged in the sum of $7,000.00."

Summons was issued directed to the sheriff of Creek county. The return showed service by ". . . delivering a true and certified copy thereof to D. M. Tankersley, personally, he being the Secretary and a member of Local Lodge No. 619, Brotherhood of Railroad Trainmen, and a member of Brotherhood of Railroad Trainmen, an Association doing business for gain in the State of Oklahoma".

Motion to quash service and a demurrer to the petition were filed and overruled. Defendant answered and by amended answer duly verified denied each and every, all and singular the allegations of the petition and specifically denied that it is an association engaged in business for gain in the State of Oklahoma and that for that reason the court acquired no jurisdiction over the defendant. The answer further specifically denied that defendant at any time ever was, or acted as, the agent of plaintiff in any matter pertaining to the allegations of plaintiff's petition, or otherwise. By supplemental amendment to the answer, defendant pleaded the statute of limitations.

By stipulation of the parties, a jury was waived and the issues were tried to the court, resulting in findings of fact and judgment for defendant, and plaintiff appeals.

It may here be noted that plaintiff's proof wholly failed to support his claim against defendant on either of the first two grounds set forth in his petition. The settlement agreement as to the employees at Francis, when identified and introduced in evidence, conclusively showed that there was no agreement to pay any money to the Brotherhood for the employees and that no money was actually paid to the defendant. It further shows that payment was made directly to the employees and shows the amount the Trustees were to pay each employee mentioned in the agreement.

This leaves for consideration only the question of alleged bad faith on the part of the Brotherhood by not including plaintiff in the employees named as entitled to pay.

The trial court found that plaintiff discontinued his membership in the Brotherhood in 1932; that after he filed his original claim with his home lodge at Francis it was never pursued through the proper channels and committees and never found its way to the point where it could be acted upon had plaintiff remained a member.

The record does show that plaintiff filed his complaint with his local lodge at Francis sometime in 1931. It was accepted by the local lodge and turned over to the proper committee for adjustment, but nothing appears to have been done in the matter before the local lodge at Francis ceased to exist in July, 1932. What became of the records of the Francis lodge when it became defunct is not shown. It was not shown that that claim ever got beyond the committee of the local lodge at Francis.

632

The complaint never reached the general committee to which it should have been sent after failure of the local lodge to settle the claim with local representatives of the Railway Company.

The record further shows that the local lodge ceased to exist long before the Trustees in Bankruptcy took over the operation of the Railway, which occurred November 1, 1932. The evidence shows that the Trustees for the Railway Company refused to consider any claim for any employee for any part of the period between the time the yardmen at Francis were furloughed in 1931 and the date the Trustees in Bankruptcy took over the property of the Railway Company.

The claim which resulted in the settlement made in 1939 was that of W. I. Lahue, presented through the local lodge at Sapulpa, dated April 27, 1937, and accepted for adjustment by the Sapulpa Lodge May 3, 1937. The trial court found that plaintiff's claim, or complaint, was never filed with the Sapulpa Lodge and that under the constitution and rules of the Union (Brotherhood), when plaintiff dropped out, he had no further right to call upon the Brotherhood, or its mechanics, to represent him in the prosecution of his claim, and that plaintiff had no cause of action against the Union because it did not represent him.

Plaintiff contends that he never lost membership in the Brotherhood for failure to pay his dues, in that section 129 of the constitution provides that the dues of members shall be paid monthly in advance before the first day of the month, to the treasurer or collector (when such office exists). Plaintiff asserts that he did pay his dues to the local lodge until the lodge became defunct and that payment so made in fact paid his dues down to October 1, 1932. He further asserts that thereafter there was no person or officer to whom he could pay his dues and therefore he did not cease to be a member of the Brotherhood for failure to pay his dues

as required by section 129, and that therefore he is still a member.

Section 141 of the by-laws provides that any member failing to pay his dues and assessments as required by section 129 becomes expelled without notice or further action whatsoever. The requirements of section 129 are that the dues of members shall be paid monthly in advance before the first day of each month, to the treasurer or collector (when such office exists). Section 43 of the constitution of the Grand Lodge defines a "defunct lodge". Section 44 provides that a member of a defunct lodge may be granted a dispensation to join some other lodge, upon application to the President of the Brotherhood, and that such dispensation shall be treated the same as a card of withdrawal when presented to a lodge for admission. Said section further provides:

"The President of the Brotherhood shall be authorized, at his discretion, to transfer a member of a defunct lodge, who was in good standing up to the time such lodge became defunct, to a lodge having proper jurisdiction, provided the application for such transfer is made within 30 days from the date on which the lodge became defunct".

Thereby plaintiff was furnished two methods by which to retain membership in the Brotherhood. He availed himself of neither method and for that reason defendant contends that after October 1, 1932, plaintiff ceased to be a member of the Brotherhood and that the Brotherhood is not under any obligation to represent him in the settlement and was without authority so to do.

In view of the construction of the National Railway Labor Act by the Supreme Court of the United States in Elgin, etc., Railway Co. v. Burley, 325 U. S. 711, 89 L. Ed. 1886, 65 S. Ct. 1282, it is unnecessary in this case to decide whether or not plaintiff ceased to be a member of the Brotherhood for failure to pay his dues.

There is no evidence whatever that plaintiff ever specifically authorized the Brotherhood to represent him in any claim against the Trustees in Bankruptcy of the Railway Company, even though he did present a claim to the Brotherhood as against the Railway Company in 1931, prior to the bankruptcy proceedings. In Elgin Railway, supra, the court points out that the Railway Labor Act, 45 U.S.C.A. ch. 8, sec. 152, recognizes two types or kinds of disputes often arising between railway management and employees, which may be adjusted thereunder, and that the two are sharply distinguished though there are points of common treatment. With reference thereto, the court said:

"The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

"The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future."

The dispute which gave right to the complaint or claim of Lahue in the instant case belongs to the first division of the second class, i.e., it involved a claim for compensation for alleged violation of rights under an existing collective agreement. It was held in the Elgin Case, supra, that the Brotherhood had power as collective agent to make an agreement with the carrier, effective for the purpose only to settle a question of starting time (a major dispute) and that that power was derived from the act itself. With reference to claims for money coming under the first division of the minor class of disputes, it was held:

"Express authorization, over and above its statutory powers, as the duly selected bargaining agent of employees under the Railway Labor Act of 1934 (45 U.S.C. § 151), is necessary to enable a union to settle past individual grievances of employees or to be the exclusive representative of the employees in proceedings concerning such grievances before the National Railroad Adjustment Board."

It was further held:

"The mere making of complaints concerning grievances by railroad employees through local union officials does not, as a matter of law, amount to final authorization to the union to settle the claim or represent the employees, as regards their individual rights, before the National Railroad Adjustment Board."

And:

"That railroad employees authorized a union to submit a complaint concerning grievances to the National Railroad Adjustment Board does not, as a matter of law, constitute authorization to the union either to settle the claims in dispute or to represent the employees in a subsequent proceeding before the Board initiated by the union submitting another complaint concerning such grievances."

Under the record in the instant case and the decision of the Supreme Court in the Elgin Railway Case, supra, there was no legal obligation resting upon the defendant to represent plaintiff in any claim he may have had against the Trustees of the Railway Company. Had plaintiff filed the claim and grievance with a local lodge, covering the period for which the settlement was made, which he did not, that, of itself, would not have made the Brotherhood his agent with power to settle his claim.

It would not have authorized the defendant to represent him, whether he remained a member of the Brotherhood or not, unless plaintiff individually and specifically authorized the defendant so to act. There is no evidence that he ever did so in this case. As we view the law, any claim which plaintiff may have against the Trustees of the Railway Company was not affected one way or the other by the settlement agreement. Had plaintiff been included in the list of employees and paid his proportionate share of the total amount paid by the Trustees, that settlement would not have been binding upon him. He could still prosecute a claim for any balance he might have.

So far as the record discloses, plaintiff is yet free to prosecute his claim against the Trustees of the Railway Company through the proper channels.

What we have said renders it unnecessary to consider the question of jurisdiction or the question of limitations presented by the defendant.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS and WELCH, JJ., concur.

Kerr, Lambert & Conn, of Ada, for plaintiff in error.